UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH LONGUSKI,

    Plaintiff,

vs.                                                                                          Case No. 11-11595

IRON WORKERS' LOCAL NO. 25                                       HON. AVERN COHN
PENSION PLAN, and BOARD OF
TRUSTEES OF THE IRON WORKERS
LOCAL 25 PENSION FUND,

    Defendants.
_____/

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD (Doc. 23)[1]

I.  Introduction

This is a benefits case under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq (ERISA).  Plaintiff Keith Longuski sued defendants Iron Workers' Local No. 25 Pension Plan and the Board of Trustees of the Iron Workers Local 25 Pension Plan (collectively, "the Plan") claiming that his disability pension benefit was wrongfully terminated.  The Plan paid plaintiff a disability pension benefit (benefit) from September 1998 (retroactive) until February 2010, when the Plan determined that plaintiff was never entitled to a benefit from the beginning of payment.  The Plan filed a counterclaim seeking to recover the benefits it paid to plaintiff.

The matter initially came before the Court on plaintiff's motion for judgment on

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

the administrative record. The Court denied plaintiff's motion and entered a judgment in favor of the Plan. (Doc. 16). The Court also dismissed the Plan's counterclaim without prejudice. See Id. at n. 6. The Plan filed a motion for reconsideration, seeking reinstatement and a judgment on its counterclaim or in the alternative, reinstatement and entry of a briefing schedule on its counterclaim. The Court granted the motion in part and set a briefing schedule on the counterclaim. (Doc. 21)

Before the Court is the Plan's motion for judgment on the administrative record as to its counterclaim. For the reasons that follow, the motion will be denied.

## II. Legal Standard

The Court's review is limited to the contents of the administrative record. Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 616 (6th Cir. 1998). The Plan argues that because its decision to terminate benefits survived arbitrary and capricious review (which is the "least demanding form" of judicial scrutiny), then its motion for summary judgment must also be granted as to its claim for overpayment of benefits. The Plan's counterclaim for overpayment of benefits, however, is not subject to arbitrary and capricious review. Rather, the Plan's motion for summary judgment on its counter-claim for overpayment of benefits is governed by Fed. R. Civ. P. 56. See Wooden v. Alcoa, Inc., Slip Copy, 2012 WL 274764, *6 (N.D. Ohio Jan. 31, 2012) (applying Rule 56 standards to plan's motion for summary judgment on counterclaim for reimbursement of overpayment of benefits).

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56. A factual dispute is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether there is a genuine issue of material fact is determined by asking if a reasonable jury could return a verdict for the non-moving party. Id. When evaluating a motion for summary judgment, the facts are to be construed in a light most favorable to the non-moving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Analysis

#### A.

It is important to set forth type of claim the Plan is bringing in its counterclaim. As the Court noted in the order denying plaintiff's motion for entry of judgment, the claim is presumably one for equitable relief. Under § 502(a)(3)(B)(ii) of ERISA, a fiduciary may bring a civil action "to obtain other appropriate equitable relief…to enforce…the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii). Hence, only equitable relief is available. Great-West Life & Annuity Ins. Co. v. Knundson, 534 U.S. 204 (2002); Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006); Gilchrist v. Unum Life Insurance Co. of America, 255 Fed. Appx. 38 (6th Cir. 2007). "For restitution of insurer payments to be of an equitable nature [and thus recoverable under ERISA], the restitution must involve the imposition of a constructive trust or equitable lien on 'particular funds or property in the [insured]'s possession.'" Hall v. Liberty Life Assur. Co. of Boston, 595 F.3d 270, 274-275 (6th Cir. 2010)(quoting Knudson, 534 U.S. at 213). "The plan must identify a particular fund, distinct from an insured's general assets, and the portion of that fund to which the plan is entitled." Id.. (quoting Sereboff, 547 U.S. at 363).

In Sereboff, an ERISA plan fiduciary sued beneficiaries for a reimbursement of medical expenses paid by the plan when the beneficiaries had settled with third-party tort-feasors for their injuries. The health plan at issue contained a third-party reimbursement provision. The Supreme Court held that the action to enforce that provision was an equitable remedy, available under ERISA, "because it [was] indistinguishable from an action to enforce an equitable lien established by agreement." Sereboff, 547 U.S. at 368. Important to the Supreme Court's decision was the fact that the plan's third-party reimbursement provision "specifically identified a particular fund, distinct from the [beneficiaries'] general assets…and a particular share of that fund to which [the fiduciary] was entitled." Id.

Thus, a repayment claim seeking enforcement of an equitable lien under ERISA must be based on an applicable plan provision that has identified a particular fund, distinct from the beneficiary's general assets, and a particular share of that fund to which the Plan was entitled. See Trustees of the Intern. Broth. Of Elec. Workers Local No. 129 Pension Plan v. Crafton, 2011 WL 53103 (N.D. Ohio Jan. 7, 2011)(unpublished)(quoting Sereboff, 547 U.S. at 364). The Plan's counterclaim is therefore viable only if the terms of the Plan specifically permit the trustees, as fiduciaries, to recover overpaid benefits. See Gilchrist, 255 Fed. Appx. at 45-46.

B.

Plaintiff first argues that the Plan's motion must be denied because the relevant plan provisions do not authorize a claim for recoupment of benefits. The Plan argues that several provision in plan documents allow for such a claim. At the outset, the parties refer to two versions of the plan: (1) "the 1996 plan," the full text of which is in the

4

administrative record (AR 95-160) and was the version in effect at the time plaintiff applied for and was granted benefits; and (2) "the 2010 plan" which was in effect at the time the Plan terminated plaintiff's benefits. Although the 2010 plan is not part of the AR, the Plan cited from the 2010 plan in one of the letter's terminating plaintiff's benefits.

Plaintiff first contends that the 1996 plan does not contain a reimbursement provision. The Plan says that although the 1996 plan does not contain a specific provision authorizing it to seek reimbursement, it does contain language which reasonably allows for such action. The Plan cites section 8.5 which generally states that no participant is entitled to any benefit except as has been specifically granted under the terms of the plan. The Plan also cites section 7.2(b) which permits the trustees "to make determinations as to the rights under the Plan of any participant applying for or receiving benefits and to afford any such individual dissatisfied with any such determination the right to a hearing thereon."

Plaintiff has the better argument. In Trustees of the Intern. Broth. Of Elec. Workers Local No. 129 Pension Plan v. Crafton, 2011 WL 53103 (N.D. Ohio Jan. 7, 2011), the pension plan paid Crafton benefits for 15 years before discovering that he did not have enough years of service to be eligible. The plan sued Crafton, asserting a claim for overpayment of benefits under ERISA, contending that Crafton was obligated to repay because he was not entitled to benefits under the Plan in the first place. Crafton moved to dismiss the plan's claim because the applicable plan did not contain the type of authorizing language required under the Supreme Court's decision in Sereboff and the remedy of repayment was therefore not available under ERISA.

The district court granted Crafton's motion to dismiss, finding that it lacked subject

5

matter jurisdiction over the plan's ERISA claim for repayment because "the Pension Plan does not authorize reimbursement actions with sufficient specificity to enable a civil action under ERISA §503(a)(3)(B)." Id. at *2-3.

In Crafton, like the Plan here, the pension plan argued that "the Plan's grant of administrative authority to the Trustees, in addition to the Trustees' fiduciary duty to ensure proper use of the Pension Plan's funds, allows [the Plan] to bring an action for overpayment." Id. at *2. The district court rejected this argument because the trustees could "point to no language in the Pension Plan specifically authorizing reimbursement actions." Id. "Though these terms of the Plan gives [sic] the Trustees final say over administration of the Plan, it does not contain any language authorizing an action to recover overpayment or establishing an express lien against a specifically identified fund." Id. (citing Sereboff, 547 U.S. at 361-69 and Gilchrest, 25 Fed. Appx. at 45-46).

Here, as noted above, the 1996 plan does not contain any provision authorizing the recoupment of alleged overpayments or any provision which could reasonably be interpreted as such. Under Knudson, Sereboff, Gilchrist and Hall, the absence of such a provision is fatal to the Plan's counterclaim.

The Plan, however, also argues that because the 2010 plan contains a reimbursement provision under section 7.13, it can bring its counterclaim.[2] This argument does not carry the day. Section 7.13 provides:

---

[2]Not only does this provision not appear in the version of the Plan in the AR, in the Plan's three letters to plaintiff regarding terminating his benefits, only one letter, the August 26, 2010 denial on plaintiff's first appeal, mentions this provision. Moreover, at no time until the filing of this case did the Plan seek to enforce this provision against plaintiff.

> The Fund has a right to recover from any participant, pensioner, spouse, surviving spouse, beneficiary, or other payee any amounts paid by the Fund which were not properly owing under the terms of the Plan, whether or not such amounts were paid by mistake, fraud, or any other reason. The Fund has the rights to pursue the payee . . . for the full amount due and owing under this provision. At the Fund's sole discretion, it may enforce this provision by offsetting future benefits until the amount owed has been recovered.

Section 7.13 of the 2010 plan, even if applicable, does not identify a particular fund, distinct from a beneficiary's general assets, and it does not identify the portion of the fund to which the plan is entitled. Similar language has been found to confer only a right to recover legal damages, which is not actionable under an equitable claim under § 1132(a)(3)(B)(ii). In Spectrum Health, Inc. v. Good Samaritan Employers Assoc., Inc., 2008 WL 5216025 (W.D. Mich. 2008), the district court held that the plan did not create an equitable interest in the overpayment itself, but rather gave the administrator the right to recover the amount of the overpayment. Thus, "[r]ather than establish an equitable lien, the Plan establishes a claim at law for money damages." Id. at 12 (citing Restatement of Restitution § 20 (1937); 4 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 1047 (5th ed.1941)). The Plan is therefore not entitled to recoup the benefits it paid to plaintiff under Section 7.13.

Moreover, as plaintiff points out, the 2010 plan contains a provision regarding the effect of amendments, stating they are not retroactive:

> ARTICLE 2
> EFFECT OF AMENDMENTS
> Except as otherwise set forth in this Plan or as otherwise required by law, the benefits of an Inactive Participant shall be determined in accordance with the provisions of the Plan in effect at the time he/she became an Inactive Participant and subsequent Plan amendments shall be disregarded. Except as otherwise set forth in this Plan or otherwise required by law, the benefits of a Pensioner (and his/her Surviving Spouse, if any) shall be determined in accordance with the provisions of the Plan in effect on the annuity starting date and subsequent Plan

amendments shall be disregarded.

The Plan has not contended that the Amendments containing section 7.13 are retroactive. A reasonable interpretation of Article 2 is that section 7.13 is not retroactive.

Finally, Plan argues that it acted reasonably in applying section 7.13 because the 2010 plan was in effect at the time it determined plaintiff was not eligible for benefits. This argument is not persuasive. The Plan's position has been that plaintiff was never entitled to benefits and was an inactive participant at the time he applied for benefits in 1998. At the time he applied for benefits, the 2010 plan was <u>not</u> in effect.

In sum, neither the 1996 plan or the 2010 plan identifies either a specific fund, distinct from plaintiff's general assets, or a share of that fund from which the plan is entitled to recover damages. There is no plan provision which gives the Plan the right to recover the benefits it paid to plaintiff. As such, the Plan cannot make out a viable claim for relief under § 1132(a)(3)(B)(ii).

C.

Even assuming that the Plan has the right to seek recoupment of benefits, plaintiff alternatively argues that granting such relief would be inequitable. The Court agrees. Plaintiff is correct that the Plan's decision to stop paying benefits and its right to recover damages are separate issues. As discussed above, the remedy the Plan can seek is equitable. The Sixth Circuit considered the equitable nature of a claim seeking to recover benefits paid in <u>Wells v. United States Steel & Carnegie Pension Fund, Inc.</u>, 950 F.2d 1244, 1251 (6th Cir. 1992). In <u>Wells</u>, the district court awarded judgment to the fund on its counterclaim for overpayment of benefits. The Sixth Circuit reversed and remanded because it was "concerned with the possible inequitable impact recoupment

may have on the individual retirees." Id. at 1251.  The Sixth Circuit based its decision on the retirees' affidavits "describing the hardship they would suffer if they were forced to pay back benefits which they had received and depended upon." Id.  The Sixth Circuit remanded to the district court "to consider whether, under principles of equity or trust law, relief is unwarranted." Id.  Although the Sixth Circuit did not suggest any particular outcome, either "implicitly or otherwise," it did provide guidance for the district court's application of principles of equity and trust law to the remedy of repayment on remand:

> The district court may wish to consider Thorn v. United States Steel & Carnegie Steel Pension Fund, CV-P-1829-S (M.D. Ala. 1983).  In Thorn, the court held that under trust law recovery of an overpayment by a trustee will not be allowed where the beneficiary, in reliance on the correctness of the amount of benefits, changes his position so that it would be inequitable to compel him to make restitution. Restatement (Second) of Trusts § 254, Comment e.  Whether repayment would be inequitable depends on the beneficiary's disposition of the money which he was overpaid, the amount of the overpayment, the nature of the mistake made by the administrator, the amount of time which has passed since the overpayment was made, and the beneficiary's total amount of income and the effect recoupment would have on that income.  Thorn, CV-P-1829-S at 3 n. 6 (citing III Scott on Trusts § 254.1 at 2187).

Wells, 950 F.2d at 1251 & n. 3.

Here, it would be inequitable to order repayment.  As detailed in plaintiff's affidavit, he did not initially apply for benefits at the time he stopped iron working because he did not believe he was eligible.  A business agent for the Plan later encouraged plaintiff to apply for benefits.  The Plan approved plaintiff's application for benefits and paid him benefits for more than 10 years before determining he had never been entitled to benefits.  Plaintiff reasonably relied upon the Plan's decision to pay him benefits and believed that it was a final decision.  Plaintiff and his family spent the benefits they received in order to pay for the necessities of living during the period he received

benefits. Plaintiff cannot afford to repay the benefits that were mistakenly paid. If plaintiff had known that there was some doubt regarding his eligibility for benefits, he says he would not have cashed his checks or he would have saved the benefit income in separate fund or account. Under these circumstances, it would be inequitable to order plaintiff to pay $97,980.00 to reimburse the Plan for the mistake it made in paying benefits in the first place.

## IV. Conclusion

For the reasons stated above, the Plan's motion for judgment on the administrative record as to its counterclaim is DENIED.

SO ORDERED.


Dated: April 13, 2012

   S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 13, 2012, by electronic and/or ordinary mail.

   S/Julie Owens
Case Manager, (313) 234-5160